## Myer *v.* Curry et al., Appellants.

*Deeds — Boundaries — Courses and distances—Adjoiners—Discrepancy.*

1. Where a tract of land is described by calls for adjoiners and not by courses and distances, or, if the courses and distances are given also and there is a discrepancy between these and the calls for adjoiners, the grantee takes title to all of the land within the calls; and the calls for adjoiners will also take precedence over a recital of the quantity of land conveyed.

*Mines and mining—Coal—Permitting coal to be mined—Estoppel—Words and phrases—"Embrace."*

2. Where an owner of coal in a tract of land stands by and permits another to mine coal under the tract during a period of twenty-six years, he cannot thereafter assert title to the unmined coal in the tract.

3. The word "embrace" as used in a deed for coal, was construed in this case as meaning "to include as parts of a whole."

Argued September 29, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 148, March T., 1927, by defendants, from order of C. P. Allegheny Co., July T., 1923, No. 1329, refusing judgment for defendant n. o. v., in case of Gilbert F. Myer v. Albert Curry and the Colonial Trust Co. of Pittsburgh, administrators of estate of William L. Curry, deceased, and Rudolph W. Stuler. Affirmed.

Trespass for treble damages for alleged illegal mining of coal. See 287 Pa. 489. Before McVicar, J.

The opinion of the Supreme Court and report in 287 Pa. 489 state the facts.

Verdict and judgment for plaintiff for $27,000 with findings that $17,300 was on account of profits.

*Error assigned,* inter alia, was refusal of judgment for defendant n. o. v., quoting record.

*Thomas D. Chantler,* with him *William A. Jordan,* for appellants.

*A. M. Simon,* for appellee, cited: Cox v. Couch, 8 Pa. 147; Pringle v. Rogers, 193 Pa. 94; Miller v. Cramer, 190 Pa. 315; Over v. Lindsay, 255 Pa. 283; Donaldson v. Fellabaum, 68 Pa. Superior Ct. 347; McGowan v. Bailey, 155 Pa. 256; Miles v. Coal Co., 250 Pa. 147.

Opinion by Mr. Justice Schaffer, November 28, 1927:

When this case was here before (287 Pa. 489), being of opinion that the court below was in error in entering judgment for defendants non obstante veredicto for the reason which it assigned, we set aside the judgment and returned the record with directions to consider the second proposition advanced by defendants, that plaintiff was not entitled to recover because title to the coal mined, which is the subject-matter of the suit, was not in him but in defendants. This the court below has done, and has reached the conclusion that plaintiff has

established his title, and, in accord with our direction, entered judgment in his favor for the profits realized by defendants on the coal which they mined.

We will not again review all the facts in the case, they will be found in the previous report, but we will briefly state the grounds upon which we affirm the conclusion of the trial court.

John Penny is the common source of title. The deed from his assignees in bankruptcy to Sneathen and others, plaintiff's predecessors in title, dated August 31, 1878, conveyed by courses and distances a tract of land containing 14 acres and 140 perches "on which are erected the coal tipple, incline railroad, check houses and other buildings and improvements connected with the coal works of said bankrupt. Also in connection with the real estate above described, all the black merchantable stone coal in the coal seam that has been open and worked by said bankrupt and underlying the said land and other adjoining lands of said bankrupt in said township, bounded by the Youghiogheny River, by lands of Levi Edmundson, Robert Caughey, Henry Ourie, Wesley Edmundson, Alexander Edmundson, Morris Williams, George Weisard and the heirs of James B. Henderson; and also in connection with the same all the stone coal underlying the tract of land known as the Caughey Farm in said township adjoining said last mentioned land of said bankrupt......Also in connection with the same all the stone coal underlying lands of Hiram Edmundson in said township, adjoining said last mentioned land of said bankrupt......embracing in all 114 acres 152.83 perches of unmined coal in the seam that is now being worked according to a survey of said coal made by R. F. Hunter at the request of the parties of the first part in April and May, 1878, a plan of which survey is attached to and made part of the petition" for sale. The deed to plaintiff and the mesne conveyances use substantially the same description.

Defendants are lessees from F. A. McClure, who claims through Andrew McClure, to whom the assignees of John Penny on October 23, 1878, conveyed a tract of land containing 203 acres and 18 perches "excepting and reserving therefrom and thereout, however, all the black merchantable stone coal in the coal seam that is now being worked, together with all the rights and privileges necessary to the convenient and successful mining and taking out of said coal, being part of the same coal and mining privileges which have been conveyed to John B. Sneathen et al., by deed dated August 31, 1878."

The Hunter plan referred to in the deed to Sneathen and others shows a number of tracts all designated by letters. The sum of the total content of them as enumerated on the plan is 114 acres 152.83 perches, which is the precise amount named in the Sneathen deed in the above named clause "embracing," etc. It is admitted by plaintiff that none of the coal which was mined by defendants came from these enumerated tracts.

Appellants contend that the language of the deed "embracing in all 114 acres 152.83 perches of unmined coal" limits the amount of coal which plaintiff and his predecessors acquired, and, as defendants mined none of the coal within this area, there can be no recovery against them. Plaintiff's position is that he and those through whom he acquired title took all the coal in the tract as described in their deeds bounded by the Youghiogheny River and the named adjoining owners. We are of opinion that under well established rules of law plaintiff's title must prevail.

Where a tract of land is described by calls for adjoiners and not by courses and distances, or, if courses and distances are given also and there is a discrepancy between these and the calls for adjoiners, the grantee takes title to all of the land within the calls: Cox v. Couch, 8 Pa. 147, Gibson, C. J.; McGowan v. Bailey, 155 Pa. 255; Pringle v. Rogers, 193 Pa. 94; Over v. Lindsay, 255 Pa. 283; Muia v. Herskovitz, 283 Pa. 163.

The calls for adjoiners will also take precedence over a recital of the quantity of land conveyed: Miller v. Cramer, 190 Pa. 315.

Another strong circumstance in aid of plaintiff's title is that Sneathen and his co-owners and their successors in title proceeded to mine coal under the McClure land which was not within the enumerated tracts of solid coal mentioned in the Hunter survey and continued this mining for many years, their right so to do not being contested by Andrew McClure or his successor in title, F. A. McClure, from whom appellants obtained their lease. Neither one of the McClures mined any coal of the Pittsburgh vein under their farm, and extensive mining operations beneath it were carried on by Sneathen and his co-owners and those who claimed under them at places outside of the enumerated tracts shown in the Hunter survey, from 1878, when the coal was purchased, until at least 1904, without objection from the McClure's. Indeed F. A. McClure did not openly assert title to the coal until the lease was executed to defendant, forty-four years after his father acquired title to the farm. When the lease was made, F. A. McClure was careful to specify that the coal conveyed was that "owned and possessed" by him. He had owned the surface of the land for thirty-five years before he made the lease. While it might be difficult to conclude just what coal was excepted in the McClure deed without evidence as to what was meant by "the coal seam that is now being worked," still Andrew McClure and F. A. McClure construed it to include all the coal under the tract, by not attempting to mine it themselves or lease it and by not objecting to the mining of it by Sneathen and his associates and those who followed him as grantees. If all that was intended to be reserved out of the deed from the assignees of Penny to McClure, was the 114 acres 152.83 perches, it is difficult to see why this was not set forth in the reservation and why no mention was made in it of the Hunter survey.

Considering everything on the record, we are constrained to believe that the word "embrace" as used by the scrivener in the deed was with the meaning, including as part of the coal conveyed, 114 acres 152.83 perches of unmined coal, because admittedly there were pillars and stumps in the old workings. As defined by Webster, the word "embrace" means "to include as parts of a whole."

In the light of what we regard to be the controlling principle of law and the authorities supporting it and the failure of the McClure's to assert title to the coal and their acquiescence in its mining by Sneathen and his associates and those claiming under them, we think it cannot be successfully maintained that defendants had any lawful claim to the coal which they mined or for the profits which, by the judgments entered in the court below, they are required to pay.

The judgment is affirmed.