## Brunier *v.* Stanert, Appellant.

Argued November 16, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Henry Panfil*, with him *Moore, Panfil & James*, for appellants.

*Howard M. Kuehner*, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 7, 1952:

Mary A. Brunier instituted this bill in equity against Alice Stanert, appellant in appeal No. 179, William A. Stanert, appellant in appeal No. 190, and Victor F. Girard, a magistrate, to (1) restrain further prosecution of an action instituted by appellants before Girard against Mary A. Brunier for the purpose of obtaining possession of premises situate at 1673 Fillmore Street, Philadelphia, and (2) compel a reconveyance of the premises to her. The bill in equity averred that a conveyance by plaintiff to Alice Stanert by deed dated December 27, 1948 was made upon an oral trust for her, plaintiff's, benefit. An answer and amended answer were filed denying the trust, averring an absolute sale and, under new matter, asserting the Statute of Frauds and a scheme to hinder and delay a creditor, the City of Philadelphia.

Hearing was had before the chancellor and an adjudication entered granting the prayer of the bill. These appeals are from the final decree of the court below dismissing objections to said adjudication.

The facts found by the chancellor and approved by the court *en banc* were as follows. Mary A. Brunier,

plaintiff, is the widow of George F. Brunier. The latter died on June 11, 1945, leaving his entire estate to her. She is 66 years of age, of sound mind, able to read the English language, and is employed at a salary of $80 per month, plus board. She has resided at 1673 Fillmore Street, Philadelphia, the premises involved, for 25 years. The property had been held as tenants by the entireties so that upon her husband's death she held the property in her own name, subject to an existing and overdue mortgage of $3,000. Defendant, Alice Stanert, is the niece of plaintiff and the wife of William A. Stanert, also a defendant. At the time of his death the husband was the sole owner of premises 1909 North Marshall Street, Philadelphia.

The Stanerts resided in a rented second floor apartment at 1411 Frankford Avenue, Philadelphia. Subsequent to the death of George F. Brunier, Alice Stanert became the "confidante" of Mary A. Brunier and attended to many of her business and personal affairs. Plaintiff, upon advice of her attorney, transferred the Fillmore Street property to Alice Stanert with the understanding and agreement that it would be reconveyed to her upon her request and when her affairs would be straightened out. The value of the property at the time of conveyance was $5,000, subject to the mortgage of $3,000. The sole consideration paid the plaintiff was defendant's assumption of the mortgage debt. Plaintiff was induced to part with her title by reason of the confidence and trust reposed in Alice Stanert. The conveyance of the property was part of a plan to refinance the overdue mortgage and prevent loss of the property through foreclosure. Subsequent to March, 1949 plaintiff requested reconveyance of the property and offered repayment of any monies voluntarily advanced by the Stanerts for payment of taxes, interest and principal of the mortgage.

On June 11, 1945, the date of Brunier's death, current and 1943 real estate taxes were unpaid on the Fillmore Street property. There was also unpaid water rent. On the same date current taxes, part of the 1941 taxes and all of the 1942 and 1943 taxes were unpaid on the Marshall Street property, as well as water rent bills. Plaintiff was represented by Joseph D. Freney, Esquire. He advised her to sell the Fillmore Street property. At the time of the signing of the agreement for the sale of the premises, October 15, 1948, the property was in disrepair in that it had old second-hand radiators, damaged wallpaper, was badly in need of painting and carpentry repair work, and the fence about the property had fallen down. Freney on June 14, 1948 advised the city solicitor's office that the present market value of the property was about $3,500. During discussions prior to the execution of the agreement of sale, Freney secured a written appraisement in the sum of $3,200. Freney further wrote to the city solicitor's office that "the present value of the property due to its present condition would not exceed the existing first mortgage". Immediately after settlement at the office of the Commonwealth Title Company of Philadelphia, Alice Stanert received at Freney's office from him a piece of paper showing how the existing overdue mortgage could be paid off in monthly instalments. The title company issued its title insurance policy, reciting, *inter alia*, "The estate or interest of the insured covered by this Policy: Ownership in fee." Alice Stanert on October 4, 1949 purchased a fire insurance policy in her name on the premises in the amount of $4,000. The $3,000 mortgage was refinanced on October 18, 1949 by Mrs. Stanert's payment of $500 on account of principal, thereby reducing the mortgage to $2,500. She also obtained a three-year extension to pay the balance in quarterly instalments of $50 each on account of principal. All of the money

which Alice Stanert paid to complete settlement, to reduce the mortgage principal, to pay the interest on the mortgage, to pay the fire insurance and to pay taxes, water and sewer rent for 1949, was her own money.

The chancellor concluded that a confidential relationship between plaintiff and Alice Stanert had been established justifying plaintiff's confidence and the belief that defendant would keep the faith reposed in her; that this relationship was the inducement for the transfer of the property; that the transaction involved was within the exception to the prohibition contained in the Statute of Frauds; that the fraud herein involved was constructive fraud based on the breach of the oral promise of Alice Stanert, which promise was the inducement to effect the conveyance; that defendant holds title subject to an equitable duty to convey to plaintiff and would be unjustly enriched if permitted to retain it; and, entered a decree *nisi* granting the prayer of the bill.

Appellants (defendants) contend that (1) in the absence of fraud or mistake, a formal written agreement for the sale of real estate executed by legally competent parties followed by formal settlement pursuant thereto cannot be impeached by parol testimony; (2) the alleged oral trust is squarely within the prohibition of the Statute of Frauds; (3) the finding of unjust enrichment is not supported by the evidence and (4) the finding of a confidential relationship is not supported by the evidence.

The decree appealed from is necessarily based upon the existence of a confidential relationship between plaintiff and defendant, Alice Stanert, and unjust enrichment. If the evidence is insufficient to support these findings, there is no basis for the court's finding that "The defendant holds title to the property subject to an equitable duty to convey it to plaintiff

and would be unjustly enriched if she were permitted to retain it. Therefore a constructive trust arises."

Appellee invokes the well established rule that findings of fact of a chancellor, approved by a court *en banc,* have the force and effect of a verdict of a jury and will not be disturbed on appeal if there is any evidence of rational probative force to support them. We recognize this principle as we do the further principles that oral trusts are viewed with disfavor by the law, that a proponent of such trust is under a heavy burden of proving the same by evidence which is direct, positive, express and unambiguous (see *Gray v. Leibert,* 357 Pa. 130, 53 A. 2d 132; *Gates v. Gates,* 158 Pa. Superior Ct. 273, 44 A. 2d 773) and, that we are not bound to accept findings resting upon inferences from undisputed evidence (*Lord Appeal,* 368 Pa. 121, 81 A. 2d 533; *Bechtold v. Coleman Realty Company,* 367 Pa. 208, 79 A. 2d 661). We are unable to agree with the court below that a confidential relationship has been established and conclude, therefore, that the burden of establishing a parol trust which falls within the exception of the Statute of Frauds has not been sustained.

The mental capacity of Mrs. Brunier to conduct her own affairs and to enter into lawful binding contracts is admitted. There is no disclosure of the absence of independent knowledge and understanding by her of what she was doing when she transferred the property to Alice Stanert. There is no proof of undue influence, inordinate flattery or physical or moral coercion which in any way did or tended to prejudice her mind or destroy her free agency. The record is devoid of any evidence which tends to establish the position of adviser or counsellor. See *Kees, Executor v. Green,* 365 Pa. 368, 75 A. 2d 602; *Drob et al., Admrs., v. Jaffe,* 351 Pa. 297, 41 A. 2d 407. There is testimony by Mrs. Brunier that "I depended on this girl to take care of my things as if she was my own daughter. . ." and ". . . I

trusted her as though she was my own daughter." This is a general expression of trust and confidence but a complete review of the testimony reveals that as to business matters affecting her disposal of property interests, especially the real estate here involved, she relied upon Mr. Freney who had settled her husband's estate and had been her own lawyer for "over 6 or 7 years". The trust and dependence upon ". . . this girl to take care of my things. . ." was ". . . through Mr. Freney, because working, I couldn't take care of it myself. . .". The extent of the trust and confidence established was to have defendant's wife act as a delivery girl for plaintiff in receiving and transmitting telephone messages and letters. Mr. Freney was the "confidant", for plaintiff was ". . . waiting for Mr. Freney to take care of all my affairs." The evidence does not support the finding that a "confidential relationship" existed between plaintiff and her niece.

Appellee, however, refers to comment c. of §44, Restatement, Trusts, for the legal proposition that ". . . Such a confidential relation exists not only where there is a fiduciary relation . . . but also where, because of family relationship *or otherwise, the transferor* is in fact accustomed to be guided by the judgment of the transferee *or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor* . . . It might seem, indeed, that wherever the transferee orally agrees to hold the property transferred to him in trust for the transferor there is a sufficient relation of confidence thereby created to justify imposing a constructive trust upon him if he breaks his promise; . . .". (Emphasis supplied)

*Metzger v. Metzger*, 338 Pa. 564, 14 A. 2d 285; *Corrigan, Executrix, v. Conway*, 269 Pa. 373, 112 A. 466 and *McDonald v. McAndrew*, 40 Pa. Superior Ct. 146, are cited in support of this asserted "long-standing rule in Pennsylvania". These cases do not so hold. *Metzger*

*v. Metzger,* supra, was unique in that the parol trust was admitted by the putative trustee. In the instant case the trust is emphatically denied. In both the *Corrigan* and *McDonald* cases the basis for the trust was an established confidential relation and an abuse of the confidence imposed.

Acceptance of the quoted comment as a correct enunciation of the law in Pennsylvania would necessitate judicial assumption of the legislative prerogative; for the salutary prohibition of the Statute of Frauds regarding parol trusts of real estate would be repealed just as surely as by a statutory repeal thereof by the Legislature itself. Further, this Court would be required to overrule, at least by necessary implication, the well established principle that oral trusts are viewed with disfavor. This Court has never held that comment c. of §44 of the Restatement of Trusts was accepted in *toto* as the law in Pennsylvania. The extent to which that portion of the Restatement has been accepted as a statement of the law is well illustrated in *Drob et al., Admrs., v. Jaffe,* supra, where Mr. Justice HORACE STERN at page 300 recognized that a confidential relationship is not limited to any particular association of parties ". . . but exists wherever one occupies toward another such a position of *advisor or counsellor* as reasonably to inspire confidence that he will act in good faith for the other's interest: . . .". (Emphasis supplied)

Our search for evidence to support the chancellor's and the lower court's finding of a confidential relationship has been in vain. The burden was upon plaintiff to establish this necessary fact. This burden has not been sustained. We must reject the argument that the mere fact of conveyance pursuant to a parol promise to reconvey at the request and direction of the transferor is sufficient of itself to create a confidential relationship or a constructive trust.

Decree reversed and judgment here entered in favor of appellant in each appeal; costs to be paid by appellee.