## Pennsylvania Milk Products Corporation v. Milk Control Board of Pennsylvania

*Snyder, Hull, Hull & Leiby,* for appellant.

*W. F. Daniels,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for Commonwealth.

Fox, J., April 20, 1936.—We have before us a motion to dismiss the petition sur appeal taken in the case entered to the above number and term, upon which motion a rule was issued directing the petitioner to show cause why the petition should not be dismissed. An answer to the rule was filed by the appellant. A number of other similar petitions sur appeal were filed, similar motions to dismiss were made, rules granted and answers filed. The principal questions in all are similar and the decision in the instant case will be applicable to all of the others.

The appeal is from General Order no. 24 of the Milk Control Board of Pennsylvania, issued January 6, 1936, effective January 16, 1936, as amended. The appeal was filed on January 15, 1936.

The legislation relating to milk and the products thereof was approved on April 30, 1935 [P. L. 96], and was a reenactment and amendment of the Act of January 2, 1934, P. L. 174. The legislature decreed it to be an emergency

act with respect to the production and marketing of milk and its products, and created the Milk Control Board. Section 14 of the act relates to licenses and appeals from the board's decisions, and in subsection ($c$) it is provided:

"The appeal provided by this section from action of the board, both in the cases of appeals to the Superior Court of Pennsylvania and appeals to the various courts of common pleas, shall be by petition against the board, officially as defendant, alleging therein in brief detail the action and decision complained of and praying for a reversal thereof. Such petition shall specify the petitioner's objections to the action and decision of the board, and no objection not so specified shall be considered by the court. Upon service of a summons upon the board, returnable within ten days from its date, the board shall, on or before the return day, file an answer, which shall deny or admit the allegations of fact in the petition, and which shall allege, by way of defense the grounds for its decision."

The petition is lengthy, and we shall briefly refer to the substance thereof.

Sections 1, 2, and 3 are recitals of the petitioner's interest and the issuing of the order.

Section 4, with a number of subsections, is to the effect that the order is unlawful, unconstitutional, illegal and void for the reason that it is in violation of section 1 of the Fourteenth Amendment and of certain articles of the Constitution, giving the number and sections thereof; that the said order does not permit the petitioner to earn from the operation, conduct and management of its business a fair return upon the capital necessarily and prudently invested therein, nor to earn a fair return upon the present fair value of the property used and useful therein, and that the prices thereby ordered discriminate in favor of producers and against the petitioner and other milk dealers; that, in the operation, conduct and management of the business, the petitioner is dependent for profit upon the difference between the price paid by him

for milk to producers and the price received by him for milk upon sale to consumers, which difference is known in the industry as the "spread", and that the petitioner is powerless to increase his "spread" under the order made under section 18(e) of the act; that the order discriminates against the petitioner in favor of all dealers in areas 1, 2, 3, 4, 5, 6, and 7, the petitioner operating in area 8, for the reason that the "spread" allowed to the petitioner upon class 1 milk is substantially less than that allowed the dealers in the aforesaid areas operating under similar or more favorable circumstances, and for the further reason that the dealers located near the borders of the State can buy milk outside the State for less than the prices fixed in the order, while those located in the interior of the State cannot do so, with the greater transportation cost; that, when buying cream from another dealer, the petitioner is required to pay greater prices than he can charge upon the resale thereof and likewise, when selling condensed skim milk to other milk dealers.

Section 5 states that the order is arbitrary, unreasonable and unlawful and constitutes an abuse of discretion vested in the board, in particular as set forth in subsections (a), (b), (c), (d), (e), and (f).

Section 6 states that the order is unlawful and void because it does not conform with the Milk Control Board Law, setting forth reasons (a) and (b).

Section 7 states that the order is illegal and void because the Milk Control Board Law was emergency legislation and the emergency which may have existed at the time of the enactment no longer exists.

Section 8 states that the order and the Milk Control Board Law are unconstitutional, illegal and void and that they are in violation of a portion of article III, sec. 7, of the Constitution of Pennsylvania, quoting the pertinent part thereof.

Section 9 states that the order is unreasonable, arbitrary, capricious and discriminatory and, if it becomes effective, will inflict upon the petitioner irreparable loss

and will destroy the business of milk dealers generally in the same locality.

Section 10 states that the Milk Control Board Law and the order are unconstitutional and void because they violate provisions of the Constitution of the Commonwealth of Pennsylvania, to wit, article I, secs. 6, 9, 10, 13, article II, sec. 1, and article III, sec. 27.

Section 11 states that the order is unconstitutional, illegal and void, in that it is not based upon valid and competent testimony.

The prayer of the petition in substance is that the court decree the Milk Control Board Law unconstitutional in all respects complained of in the petition; that the court decree the said order to be unjust, unreasonable, arbitrary, capricious, confiscatory, discriminatory, illegal and not in conformity to law, and that we remit the same to the Milk Control Board with directions to revoke the same in all particulars complained of in this petition.

The substance of the motion to dismiss is that averments 1, 2 and 3 are not ground for an appeal. This is conceded by the appellant and they were not intended as such, but inserted in the way of recital.

It is contended that the allegation of section 4 of the petition is a conclusion of law, immaterial, contrary to the order itself, indefinite, insufficient as a ground for appeal and self-contradictory. It is contended that the allegation of section 5 is a conclusion of law, immaterial and contradictory to the order itself, that the allegation of section 6 is a conclusion of law and immaterial, and that the allegations of sections 7-11 are conclusions of law and not ground for an appeal.

Section 14 (c) of the act in question, it will be noted, provides, inter alia:

"The appeal . . . shall be by petition against the board, officially as defendant, alleging therein in brief detail the action and decision complained of and praying for a reversal thereof. Such petition shall specify the petitioner's objections to the action and decision of the board, and no

objection not so specified shall be considered by the court."

In appeals from the settlement of taxes, section 1104 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1104, it is provided that:

"The party appealing shall file, with every such appeal, an affidavit, containing the specification of objections, and stating that the appeal is not taken for delay . . . and no questions shall be raised which are not included in the specification of objections filed".

In the Practice Act of May 14, 1915, P. L. 483, sec. 5, it is provided:

"Every pleading shall contain, and contain only, a statement in a concise and summary form of the material facts on which the party pleading relies for his claim, or defense, as the case may be, but not the evidence by which they are to be proved, or inferences, or conclusions of law".

Pennsylvania Rules of Equity Practice, Rule 34, requires that:

"Every bill shall contain, in a concise and summary form, a statement of the facts on which plaintiff relies, or which are deemed necessary to invalidate an anticipated defense."

It is contended by the defendant that there should be a full allegation of facts; that the appeal should have set forth allegations of fact as required in the Practice Act and in Equity Rule 34. With respect to appeals from tax settlements, that has not been the custom; that being so and the pertinent language of section 14(c) of the act in question being quite similar to that of the language relating to appeals in the tax settlement section, supra, of The Fiscal Code, it must be presumed that the legislature knew that it was not the practice under The Fiscal Code to give full allegations of fact and therefore did not intend in the Milk Control Board Law, sec. 14(c), to require the appellant to give allegations of fact; an appellant may do so, and if he does the Commonwealth must answer or deny such allegations. If the legislature had intended that allegations of fact should be made by the

petitioner sur appeal, it could have readily used language similar to that of the Practice Act or that of Equity Rule 34.

The appellee has cited as authority for its position the case of Hegeman Farms Corp. v. Baldwin et al., 293 U. S. 163. That was a suit in equity: an injunction was prayed for. The bill of complaint was found to be "so uncertain in aim and so meager in particulars" that it fell short of "the standard of candor and precision" required. Every bill in equity must allege facts when they are necessary. We are of the opinion that the case cited is not authority in the instant case, for the reason that we are guided and controlled by section 14(c) of the act in question. Nor can it be said that this is another way to procure a declaratory judgment.

The case of Bell Telephone Co. of Pa. v. Lewis et al., 313 Pa. 374, cited by the appellee, is not applicable. In that case, it was decided that a petition for a declaratory judgment may not be maintained against the Governor of the Commonwealth under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, and that the Commonwealth may not without its consent be made a party to a proceeding for a declaratory judgment. Again the answer to that is that we are guided and controlled by section 14(c). The petition shall be against the board, officially, as defendant, alleging in brief detail the action and decision complained of and praying for a reversal thereof, and the petition shall specify the petitioner's objections to the action and decision of the board. It is the action and decision of the board, not the facts on which the decision was made, to which objection may be made. These requirements are plain and clear. The requirement of brevity in the petition is expressed and implied, rather than of a prolonged allegation of facts. The facts must be brought out at the hearing to sustain the petitioner's objections, which are based upon facts, and, if the petitioner fails to produce sufficient evidence to support the averments, such averments must fall. If, on the

other hand, it does produce sufficient evidence, the averments will be sustained.

Wherefore we are of the opinion that the appellant has alleged in the petition in brief detail the actions and decisions complained of and that the said petition specifically sets forth its objection to the action and decision of the board and, that being all that is required of it, the said rule should be discharged.

And now, April 20, 1936, upon due consideration, the rule is discharged and the defendant is given 15 days from the date of filing hereof to file an answer if it desires so to do.